60 F.3d 834
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Somapala NANAYAKKARA, Plaintiff - Appellant,
v.
CALIFORNIA STATE UNIVERSITY, FULLERTON, By & Through BOARD
OF TRUSTEES OF the CALIFORNIA STATE UNIVERSITY;
Jewel P. Cobb; Jack Coleman; George
Cohn; Young D. Kwon,
Defendants - Appellees.
 No. 93-55874.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1995.*
Decided June 1, 1995.
 
 1
 Before: BEEZER and TROTT, Circuit Judges, and SHUBB,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Somapala Nanayakkara, a former associate professor at California State University at Fullerton ("CSUF"), appeals the district court's grant of summary judgment in favor of CSUF in his action brought under Title VII, 42 U.S.C. Sec. 2000e, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 623, and California state law. Nanayakkara alleges CSUF discriminated against him on the basis of race, color, national origin, and age, and committed breach of contract and fraud by denying him tenure. Nanayakkara also appeals the magistrate's order denying his motion to compel discovery. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 4
 * Discrimination
 
 
 5
 Nanayakkara disputes the district court's conclusion that he failed to present a prima facie case of racial or age discrimination or that, in the alternative, even if he did establish a prima facie case, he did not produce any evidence to suggest CSUF's legitimate nondiscriminatory reasons for denying him tenure were pretextual.
 
 
 6
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). This court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). Id. The party moving for summary judgment may meet its initial burden by showing there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). After the moving party meets this burden, the burden shifts to the nonmoving party to show there is a triable issue of material fact.[1] Id. at 322-24.
 
 
 7
 Nanayakkara claims CSUF practiced discrimination under both disparate impact and disparate treatment theories. We first review Nanayakkara's claim that CSUF's faculty review process had a discriminatory impact against minorities and those protected by the ADEA.
 
 
 8
 The United States Supreme Court has allowed disparate impact analysis to be used to challenge subjective or discretionary employment practices in addition to standardized employment practices. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 991 (1988). The requirements a plaintiff must satisfy to establish a prima facie case of disparate impact are "more exacting than those of a disparate treatment case." Lowe v. City of Monrovia, 775 F.2d 998, 1004 (9th Cir. 1986) (citation omitted), amended, 784 F.2d 1407 (9th Cir. 1986).
 
 
 9
 Where, as here, a subjective or discretionary employment practice is challenged under the disparate impact theory:
 
 
 10
 the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged.... Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.
 
 
 11
 Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.
 
 
 12
 Watson, 487 U.S. at 994 (emphasis added) (internal citation omitted).
 
 
 13
 The district court did not expressly address Nanayakkara's disparate impact claim in its order granting summary judgment. Nevertheless, the record supports the conclusion that Nanayakkara failed to establish a prima facie case of discrimination based on disparate impact.
 
 
 14
 First, Nanayakkara failed to make specific claims detailing the employment practice being challenged. Nanayakkara made the following general allegations in his first amended complaint: 1) "defendants have discriminated and continue to discriminate against minority and faculty of color on the basis of national origin and on the basis of age;" 2) "[f]acts of hiring, and granting and denial of tenure at the CSUF during at least the past four years establish a pattern of discrimination against minority of color perpetrated by setting up a group of one national origin against another national origin;" and 3) "[d]efendant CSUF has followed the practice whereby about 80% of the faculty members who were terminated or forced to leave were in the group protected by the ADEA." Nanayakkara stated in his opposition to the motion for summary judgment that the evidence "establishes that Defendant CSUF has discriminated against faculty of color and Asians and against those over 40." Finally, even before this Court, Nanayakkara only generally claims the "facially neutral practice represented in the evaluation and recommendation of the faculty for reappointment, tenure, and promotion (the "RTP" process) resulted in adverse impact of discrimination on account of race, color, and national origin and age discrimination."
 
 
 15
 Nanayakkara's general allegations fall far short of meeting plaintiff's burden to identify "the specific employment practices that are allegedly responsible for any observed statistical disparities." Watson, 487 U.S. at 994.
 
 
 16
 Second, the statistical information supplied by Nanayakkara is insufficient to show the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. The district court referred to this statistical data, observing that "[a]lthough these charts appear to list the race or national origin of CSUF professors, the Court is unable to discern a pattern of discrimination emerging therefrom."
 
 
 17
 In addition, the statistical data contradicts the declarations of two CSUF professors submitted by Nanayakkara in support of his opposition to summary judgment. Nanayakkara claims the statistical data shows a pattern of discrimination against minorities, yet John Clymer, a tenured Full Professor at CSUF, made the following statements in his Declaration:
 
 
 18
 To get the majority to toe his line, the Chair Kwon set upon firing faculty and getting his own people in their place using unethical means.... To replace the faculty he disliked, Kwon hired five people. Two of them are his native friends from Korea, and the other three are Reddy's native friends from India.
 
 
 19
 ....
 
 
 20
 In 1987, when Kwon became the chair there were 6 full time white American professors. Out of them 5 were terminated.
 
 
 21
 These statements are inconsistent with the conclusions Nanayakkara attempts to draw from the statistics.
 
 
 22
 Finally, even if the statistics were sufficient to establish disparities in employment based on race, Nanayakkara's failure to allege a causal relationship between such disparities and any specific employment practices is fatal to his claim of discrimination based on the disparate impact theory.
 
 
 23
 Nanayakkara also alleges CSUF practiced race and age discrimination under the disparate treatment theory. The parties' burdens in Title VII discrimination cases based on disparate treatment are allocated in the following manner:
 
 
 24
 [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 25
 Lowe, 775 F.2d at 1005.
 
 
 26
 A plaintiff must establish a prima facie case by offering evidence that "gives rise to an inference of unlawful discrimination." Id. (internal quotation, alteration, and citation omitted). This prima facie case may be established by offering evidence, direct or circumstantial, of the discriminatory intent of the employer or by establishing the four factors of the McDonnell Douglas presumption:
 
 
 27
 1. that the plaintiff belongs to a class protected by Title VII;
 
 
 28
 2. that the plaintiff applied and was qualified for a job for which the employer was seeking applicants;
 
 
 29
 3. that, despite being qualified, the plaintiff was rejected; and
 
 
 30
 4. that, after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of comparable qualifications.
 
 
 31
 Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).
 
 
 32
 Nanayakkara did not present any direct or circumstantial evidence of discriminatory intent. Therefore, he needed to satisfy the McDonnell Douglas presumption in order to establish a prima facie case of discrimination. CSUF does not dispute that Nanayakkara is a member of a class protected by Title VII. The issue in dispute is whether Nanayakkara was qualified to receive tenure.
 
 
 33
 The tenure review process itself indicates that Nanayakkara was at least arguably qualified to receive tenure. Both the Departmental Personnel Committee and the Dean of the School of Engineering recommended Nanayakkara be granted tenure in the second and third tenure reviews. Also, the declarations of Professors Grewel and Clymer highly rate Nanayakkara's qualifications. Therefore, for the purpose of summary judgment we accept that Nanayakkara was qualified to receive tenure.
 
 
 34
 The burden then shifted to CSUF to show the denial of tenure for Nanayakkara was based on legitimate nondiscriminatory reasons. CSUF submitted Nanayakkara's tenure reviews which clearly establish that the denial of tenure was based on the criteria as set forth in the University Policy Statement 210.
 
 
 35
 Each of the four times tenure was denied, President Cobb stressed three areas of concern: 1) teaching performance; 2) publications in peer-reviewed journals; and 3) research activities. These areas are listed as three of the criteria upon which tenure decisions are based. The undisputed evidence indicates these concerns were well-founded. Nanayakkara does not dispute that in the six years during which he taught at CSUF he published only one conference paper and no articles in peer-reviewed or refereed journals. He also does not dispute that in that same time period he received only one $5,000 research grant. Finally, the student evaluations of his teaching consistently placed him at or below the department average.
 
 
 36
 Each year, President Cobb urged Nanayakkara to improve his record in these areas with the help of the Dean of the School and the Department Chair. This advice was never heeded. Although Nanayakkara acquired impressive academic credentials prior to coming to CSUF, his research and writing activities declined dramatically following his arrival at CSUF. CSUF clearly met its burden of showing legitimate nondiscriminatory reasons for refusing to grant Nanayakkara tenure.
 
 
 37
 The burden then shifted back to Nanayakkara to show that CSUF's reasons for denying tenure were pretextual. To meet this burden Nanayakkara was required to produce "'specific, substantial evidence of pretext."' Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983)). Nanayakkara needed to do more than to rely on the prima facie case resulting from the McDonnell Douglas presumption. Id.
 
 
 38
 Nanayakkara did not meet this burden. The district court correctly observed: "Plaintiff has introduced no evidence to show that Defendants [sic] proffered legitimate reasons are pretextual.... [T]he allusions to Plaintiff's teaching ability in the Declarations of Grewel and Clymer do not support such an inference." Professor Clymer's declaration actually attributes Nanayakkara's denial of tenure to political turmoil within the department, not to race or age. The only evidence of discriminatory intent was Nanayakkara's bald assertions that he was being discriminated against because of his race and his age.
 
 
 39
 Where, as here, "evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case based on a McDonnell Douglas type presumption." Wallis 26 F.3d at 891-92. Therefore, the district court correctly granted summary judgment in favor of CSUF on Nanayakkara's claims of discrimination in violation of Title VII and the ADEA.
 
 II
 Breach of Contract
 
 40
 Nanayakkara appeals the district court's grant of summary judgment in favor of CSUF on his breach of contract claim. Nanayakkara claims that prior to accepting his position at CSUF the dean and the chair promised that he would receive tenure after his first year at CSUF.
 
 
 41
 The district court gave four independent reasons CSUF was entitled to summary judgment: 1) Nanayakkara failed to demonstrate a triable issue of fact as to the existence of an oral contract; 2) the breach of contract claim was barred by the grievance procedures set forth in the Memorandum of Understanding, the collective bargaining agreement between the CSU Trustees and the California Faculty Association; 3) the claim was barred by the two-year statute of limitations on contract claims; and 4) both CSUF and its employees were immune from liability on the breach of contract claim. The district court's stated reasons for granting summary judgment on the breach of contract claim in favor of CSUF are valid and are supported by the record.
 
 III
 Intentional Misrepresentation
 
 42
 Nanayakkara claims the district court erred in granting summary judgment in favor of CSUF on his claim of intentional misrepresentation. The district court determined that Nanayakkara had "not even attempted to introduce any evidence which would create a genuine issue of fact with respect to the requisite scienter, intent, or justifiable reliance elements." This determination is supported by the record.
 
 IV
 Motion to Compel
 
 43
 Finally, Nanayakkara contends the magistrate abused his discretion by denying Nanayakkara's motion to compel discovery. The magistrate provided three separate grounds justifying denial of the motion: 1) the motion was untimely because it was filed four months after the discovery disputes arose; 2) the motion was set for hearing on March 15, 1992, one week after the motion cutoff date ordered by the district court; and 3) the motion did not comply with Local Rule 7.15.2 requiring that either a joint stipulation specifying all issues to be determined at the hearing or a declaration of noncooperation of opposing counsel be filed with the motion. We review rulings concerning discovery for abuse of discretion. Smith v. Hughes Aircraft Co., 22 F.3d 1432, 1441 (9th Cir. 1994).
 
 
 44
 Because the primary objections raised in the motion to compel, namely the defendants' failure to produce documents, occurred more than four months prior to the filing of Nanayakkara's motion to compel, the magistrate did not abuse his discretion in denying the motion as untimely. See Herring v. Delta Air Lines, Inc., 894 F.2d 1020, 1023 (9th Cir.), cert. denied, 494 U.S. 1016 (1990).
 
 
 45
 The magistrate's decision also cited Nanayakkara's failure to timely file a motion which complied with Local Rule 7.15.2.[2] The record shows the motion to compel was not brought into compliance with Local Rule 7.15.2 until March 2, 13 days prior to the motion day for which the motion was noticed. The motion was therefore properly denied as untimely because "the notice of motion and all moving papers in support thereof" were not filed with the Clerk at least twenty days before the Motion Day for which the matter was noticed, as required by Local Rule 7.4.
 
 
 46
 Finally, we note that Nanayakkara failed to show how the additional discovery would have any affect on the district court's summary judgment ruling. Moreover, the record shows that Nanayakkara never filed a motion for continuance of the summary judgment to allow him to complete additional discovery pursuant to Fed. R. Civ. P. 56(f).
 
 
 47
 The magistrate did not abuse his discretion in denying the motion to compel discovery for failure to diligently pursue discovery or for noncompliance with the Local Rules.
 
 
 48
 For the foregoing reasons, the magistrate's denial of Nanayakkara's motion to compel discovery and the district court's grant of summary judgment in favor of CSUF are
 
 
 49
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and 9th Cir. R. 34-4
 
 
 **
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We note that the first section of the district court's order granting summary judgment is labelled "Findings of Fact." Nanayakkara correctly argues that it is improper for the district court to act as a finder of fact when ruling on a motion for summary judgment. However, after reviewing the district court's order in the light of the record, we believe the eighteen paragraphs included in the first section of the order were actually eighteen statements of undisputed fact, and not eighteen findings of fact. Any error in the district court order was merely in form and not in substance
 
 
 [2]
 Local Rule 7.15.2 provides in relevant part:
 If counsel are unable to settle their differences, they shall formulate a written stipulation specifying separately and with particularity each issue that remains to be determined at the hearing .... In the absence of such stipulation, or a declaration of counsel of non-cooperation by the opposing party, the Court will not consider any discovery motion unless otherwise ordered upon good cause shown.